CHARLES SUTPHIN, Appellee, v. GEORGE O. HOLBROOK, Appellant.

**Specific Performance:** LAND CONTRACT: FORFEITURE: WAIVER: EVIDENCE. In an action to enforce specific performance of a contract to sell land, the evidence is considered and held insufficient to show that a payment made more than thirty days after notice of election to declare a forfeiture, was made and accepted in performance of the contract so as to effect a waiver of the provisions as to forfeiture.

*Appeal from Poweshiek District Court.*—HON. JOHN F. SCOTT, Judge.

WEDNESDAY, JANUARY 20, 1904.

SUIT in equity for the specific performance of a contract for the sale of real estate. The trial court rendered a decree as prayed, and defendant appeals.—*Reversed.*

*Hedges & Rumple* and *J. T. Beem* for appellant.

*J. W. Carr* for appellee.

DEEMER, C. J.—On the 3d day of June, 1901, the parties to this litigation entered into a written contract which reads as follows:

"That on condition that before the contract hereinafter referred to shall be made or entered into, and at the time hereinafter named said Sutphin shall and do, without further demand, pay to said Holbrook, such sum of of money as shall leave due on general indebtedness from said Sutphin to said Holbrook no more than the sum of Twelve Hundred Dollars, including the $650 rent note to mature February 1st, 1902, such sum to be paid on or before the 1st day of November, 1901, at the Marengo Savings Bank, at Marengo, Iowa, and on the further condition

that said Sutphin shall and do pay to said Holbrook at said Bank, without demand, all balance of such general indebtedness on or before the 1st day of March, 1902, such balance to include the rent note to be due February 1st 1902, in the sum of $650 and interest after maturing, as per the terms of the said note that at or on any time after the said payment, said Holbrook will make to and with the said Sutphin, a contract of sale, for the sale and conveyance to the said Sutphin, of the following described land, to wit: The south three-fourths of the south half and southwest quarter (except three acres in the southwest corner thereof, used as a graveyard) two hundred and seventeen acres in section twenty three, township seventy-nine north, of range thirteen west of the fifth p. m. and in Poweshiek County, Iowa. It is specially understood and agreed that this contract is for the accommodation and convenience of said Sutphin and that there is a disposition on the part of the said Holbrook to help said Sutphin to get the land above described on favorable terms, and is made in view of the fact that Sutphin and the present and former owners of the said land have had business relations for a long time and the contract is for this purpose and not to be assigned to any other person whomsoever. And it is specially agreed that if said Sutphin shall fail in the payment of every portion of the sum agreed to be paid by the 1st day of November, 1901, or if he shall fail to pay the balance referred to herein, of Twelve Hundred Dollars by the 1st. day of March, 1902, time of such payments being of the very essence of this agreement to enter into a contract, then, there shall no longer exist on the part of said Holbrook any obligations to make the contract of sale herein referred to, and if any portion of said debts that is to be paid by November 1st, and March 1st, as herein agreed shall have been paid, it shall be retained by said Holbrook and credited on said

debt on which it shall have been paid, it being understood that such payments are not of the purchase money or any portion of it agreed to be paid for the land.   But if said Sutphin shall and do pay said sums in full, including all interest thereon accrued, and to accrue, at the times herein limited, then said Holbrook will enter into a written contract for the sale of said land to said Sutphin for the sum of Ten Thousand, Five Hundred Dollars, payable in installments, as follows:   Two Hundred dollars per year for the first two years, Three Hundred per year for the next three years, Five Hundred dollars per annum for the next six years; six hundred per annum for the next two years, and Five thousand Dollars the next year, together with interest, on all such payments at the rate of six per cent per annum, from March 1st, 1902, payable annually and all payable without demand at the Marengo Savings Bank, Marengo, Iowa.

"The contract shall require Sutphin to pay interest and taxes regularly and keep up insurance on the buildings for the benefit of Holbrook, in a sum equal to the fair insurable value of the same and will provide that when Sutphin shall have paid $3,500.00 of the principal of the purchase money and all interest and taxes on the land shall have been paid to the date of the payment of the $3,500.00, and all according to the terms of this contract, then Sutphin will be entitled to receive a deed of said land, and on receipt of same will make to Holbrook or his assigns a mortgage on the land to secure such of the purchase money of the land as shall then remain unpaid in such form as shall be approved by said Holbrook, or N. B. Holbrook, his agent at Marengo, Iowa.

"Said contract shall further provide that said Sutphin shall keep the buildings and improvements of the said land in as good condition as now or as they may have been placed in during the time they shall have been in possession of Sutphin; and shall be so drawn as to make the

time of the payment of the money agreed to be paid for said land, essential to the validity of the contract, and that if there shall be any default in the payment of any of the principal or interest and taxes of said land, or if there shall be any breach of the covenants or agreements of the contract on the part of Sutphin the rights he may have had under the contract shall be deemed to have been waived and forfeited by him and said Holbrook thereupon and thereby at his option, released from his obligation to convey the land; and there shall be such provision of the contract as shall enable Holbrook in the event of any forfeiture of the rights of said Sutphin, to enter into possession of the said land, and remove any and all persons therefrom without previous demand, and if necessary by an action of forcible entry and detainer, notwithstanding any of the provisions of the contract, at any time of the year or month; and should there have elapsed more than thirty days after such default, there shall still exist the right to commence such proceeding, as the forfeiture shall date only from the date of the election of Holbrook to declare it; or Holbrook may have any other remedy for the recovery of the land in case of the forfeiture herein referred to, that is or shall be given by law.

"Made in duplicate, each party having one piece or copy.                              George O. Holbrook.
                              "Charles Sutphin."

Plaintiff neglected to pay the amount which was required of him on November 1, 1901, and on November 6th defendant gave plaintiff notice of an election to declare a forfeiture of the contract. Thereafter, and on the 10th day of December of the same year, plaintiff paid the defendant the sum of $1,285. Defendant claims, however, that this was received by him upon an indebtedness which was owing him independent of any consideration for the sale of the land, while plaintiff insists that, by receiving this money, defendant waived the alleged forfeiture, and

that plaintiff is entitled to a decree specifically enforcing
the contract which we have quoted. Defendant contends
that the contract is not for the sale and conveyance of
real estate, but simply an agreement to make a contract,
which agreement was upon conditions which have never
been performed. He further contends that the contract
was without consideration, and was nothing more than a
mere option, in that plaintiff did not bind himself to take
and pay for the land, but had the right, upon electing to
pay certain debts, to enter into an agreement for the pur-
chase of the land. Claim is also made that the contract
was, in any event, forfeited, and that plaintiff has no
rights thereunder. There is much to be said in favor of
each of these contentions, but, as we view it, the case may
be determined wholly upon the theory of forfeiture, and
to that question alone we shall give attention.

   Such contracts as the one in question, conceding it to
be a valid agreement to sell an interest in real estate, can-
not be forfeited except on thirty days' notice to the ven-
dee, as provided in section 4299 of the Code. At the end
of this thirty day period, if the condition broken has not
been performed, the contract is forfeited, according to its
terms, for breach of condition. The notice was given
here, but, after it was given, plaintiff made some pay-
ments, which, it is claimed, amount to a waiver of the
forfeiture. If these payments were made and accepted in
performance of the contract which contained an agree-
ment to sell, then, doubtless, there was a waiver. But if
made and accepted in satisfaction or part satisfaction of
an indebtedness which existed independent of the con-
tract, then there was no waiver. This view of the case
necessitates an investigation as to the facts. It appears
that the land was at one time owned by N. B. Holbrook,
who conveyed it to C. M. and B. D. Holbrook, and they,
in turn, conveyed it to defendant, George O. Holbrook.
N. B. Holbrook, while he owned it, entered into a con-

tract in the year 1895 to sell the land to plaintiff for the sum of $10,850; and plaintiff at that time gave him a note for $350, due March 1, 1896, as representing part of the purchase price.   C. H. and B. D. Holbrook became the owners of the land after this contract was executed, and in 1897 they entered into a contract to sell to plaintiff the land for the sum of $10,500.   At the same time plaintiff executed a note to these vendors for the sum of $600, representing the rent of the land for one year.   In November of the year 1897 these same parties entered into another contract to sell the land to plaintiff on March 1, 1899, on condition that he (plaintiff) pay off certain indebtedness owing to the Holbrooks, including the $600 rent note for the use of the farm for the year 1898, and other matters of indebtedness.   Defendant acquired title to the land some time in the year 1900, and he, in turn, entered into a contract to sell plaintiff the land, provided he (plaintiff) should pay certain indebtedness owing to him (defendant), including a rent note for the year 1900. Thereafter the contract in suit was entered into.   This contract speaks for itself.   It also appears that, before the making of the last contract, defendant took up many other items of indebtedness owing by plaintiff to third parties, and on some of these he (defendant) obtained a discount.   In 1899 plaintiff owed defendant on transactions independent of the land transaction more than $1,400, after allowing all credits.   This he was obligated to pay, no matter whether the contract in suit was forfeited or not.   If he paid the entire indebtedness within the time fixed in the contract, then defendant agreed to sell him the land for an agreed price.   Plaintiff's payments after the declaration of forfeiture, if made or accepted under the contract, should, no doubt, be treated as a waiver thereof.   But if not so made, but in satisfaction of other valid debts, then there was no waiver.   There is some doubt about whether the original note given as part

of the purchase price of the land has ever been paid, and it is probably immaterial as to whether it has been paid or not, except as it throws light on the question of the application of the payments made after the declaration of forfeiture. As the case turns on the effect to be given the payments after the declaration of forfeiture, we now go directly to that question.

Plaintiff says he paid all that was due defendant under the contract, including the $350 given as part of the original purchase price of the land, while defendant contends that he distinctly refused to accept the money on the contract of sale, and that whatever he received was in payment or part payment of other valid evidences of indebtedness held by him against the plaintiff. It is evident that the defendant and the other Holbrooks carried the plaintiff along from year to year, took up his indebtedness, and made new contracts from time to time in the hope that plaintiff might eventually pay up, and be able to acquire title to the land. This they did for more than six years, and, as we have seen, at the end of that time plaintiff was indebted to them, on matters entirely independent of the land transaction, in a large sum. The original $350 note seems to have been canceled at the time, on a settlement had in the year 1899, by a discount for practically that amount of the items due from plaintiff to defendant. When plaintiff made his payments to defendant after the notice of forfeiture was served, defendant distinctly asserted that he regarded the contract as forfeited; and it appears to us that plaintiff paid the amount in satisfaction of independent items of indebtedness, hoping thereby to secure such favor from defendant as that he might obtain a new contract either for the purchase or for a lease of the lands for the coming years. . The idea that the rents received for the use of the land was treated as so much interest on the purchase price is not sustained by the evidence. But whatever the conclusion

on this branch of the case, the result reached is not of controlling importance, for, if the contract was forfeited, the interest payments were lost.    The equities of the case are with the defendant.  He has carried the plaintiff along from year to year in the hope that he might pay his debts and place himself in such position that he might take and pay for the land, but, instead of meeting his obligations, he has grown deeper in debt, and did not undertake to comply with his contract until defendant was apparently forced to take somewhat drastic measures for his own protection. The amount paid on the previous contracts did not amount to a fair rental for the time the plaintiff occupied the land. The first payment of $200 was not a full compliance with the contract, and was not tendered as such.    And the subsequent payment was evidently in satisfaction of an indebtedness which existed independent of the contract in suit.    That it was not offered to defendant as a tender of performance is made clear by the fact that the money was paid to a bank which held these evidences of indebtedness, and nothing was said about its being in performance of the land contract.    We reach the conclusion that this is not a case for specific performance, and that it should be reversed.    We are inclined to think that there should be an accounting between these parties in the district court, if either party so elects, and the remand will be with directions for such an accounting in the event either party desires it.—REVERSED.